UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:22-CV-00011-HBB

CAMILLE H.[1]                                                                                                            PLAINTIFF

VS.

KILOLO KIJAKAZI, ACTING COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                                             DEFENDANT

**MEMORANDUM OPINION
AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of Camille H. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 14) and Defendant (DN 17) filed Fact and Law Summaries. For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 12). By Order entered March 29, 2022 (DN 11), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

On December 23, 2019, Plaintiff protectively filed an application for Supplemental Security Income (Tr. 15). Plaintiff alleged that she became disabled on October 1, 2019, as a result

---

[1] Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.

of neuropathy, carpal tunnel in both hands, PTSD, and bipolar/mental health issues (Tr. 15, 79, 98). The application was denied initially on April 24, 2020, and upon reconsideration on October 7, 2020 (Tr. 15, 96, 116).[2] On November 9, 2020, Plaintiff filed a written request for a hearing (Tr. 15, 159).

On July 13, 2021, Administrative Law Judge Scott Shimer ("ALJ") conducted a telephonic hearing due to the extraordinary circumstances of the COVID-19 pandemic (Tr. 15, 34-61). Plaintiff and an attorney representative, Charles Burchett, were present on the line (Tr. 15, 34). Pamela Scalf, an impartial vocational expert, testified during the hearing (Tr. 15, 34, 60).

In a decision dated July 28, 2021, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 15-27). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since December 23, 2019, the application date (Tr. 17). At the second step, the ALJ determined that Plaintiff has the following severe impairments: obesity, neuropathy, Achilles tendinosis bilateral heels, plantar fasciitis bilateral feet, carpal tunnel syndrome, mood disorder, PTSD, and anxiety disorder (Id.). The ALJ found Plaintiff has the following non-severe impairments: hypertension, chronic gastroesophageal reflux disease, chronic congestive heart failure and mild intermittent asthma (Id.). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 18).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) except: she is able to stand and walk four

---

2 The ALJ indicates the application was denied initially on April 27, 2020, and upon reconsideration on October 8, 2020 (Tr. 16). As the Disability Determination and Transmittal forms indicate April 24, 2020 (Tr. 96) and October 7, 2020 (Tr. 116), the undersigned has used those dates.

hours in an eight-hour workday; she is limited to occasional pushing and pulling with the bilateral lower extremities; she is able to balance, stoop, kneel, crouch and climb ramps and stairs occasionally; she should not engage in crawling or climbing ladders, ropes or scaffolds; she should have no more than frequent handling with the bilateral upper extremities; she should have no concentrated exposure to extreme temperatures or humidity; she should have no concentrated exposure to pulmonary irritants; she should not engage in work at unprotected heights or around unguarded moving machinery; she is capable of simple, routine tasks; her interactions with supervisors and coworkers should be superficial and task focused; she should have no more than occasional interaction with the public; she should have only infrequent changes that are introduced gradually in the work routine (Tr. 20).

Next, the ALJ determined that Plaintiff was unable to perform her past relevant work (Tr. 25). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform (Tr. 26). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act (Tr. 26).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 72-74). The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Hum. Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y

of Health & Hum. Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Hum. Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Hum. Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton, 2 F.3d at 695-696.

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. § 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. § 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the RFC to return to his or her past relevant work?

5) Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

<u>Finding Nos. 2 and 4</u>

1. <u>Arguments of the Parties</u>

Plaintiff first argues, at step two, the ALJ did not properly evaluate whether two of Plaintiff's mental conditions—schizophrenia spectrum and other psychotic disorder and major depressive disorder severe with psychosis—were severe impairments and excluding them from the list of severe impairments adversely impacted the ALJ's findings at the remaining steps in the sequential evaluation process. Next, Plaintiff raises two arguments against the ALJ's RFC finding (DN 14, pp. 2). First, Plaintiff contends the ALJ did not properly consider Plaintiff's lower extremity EMG findings when making the standing and walking limitations. Plaintiff points to

5

function reports, third party statements, and her own testimony to show that the ALJ's finding regarding the walking limitation was not supported by substantial evidence in the record and that the ALJ did not properly follow the requirements regarding medical evidence established by 20 C.F.R. § 416.929 and Social Security Ruling 16-3p (DN 14, pp. 3-4). Second, Plaintiff argues the ALJ failed to properly evaluate the impact of Plaintiff's mental impairments under 20 C.F.R. § 416.920a in constructing the RFC (DN 14, pp. 6).

In response, Defendant argues Plaintiff's first contention should be rejected because the ALJ found Plaintiff has other severe impairments, including other severe mental impairments, and sufficiently addressed Plaintiff's schizophrenia throughout his decision by citing her hallucinations (DN 17, pp. 5). To the challenges to the RFC, Defendant states the ALJ properly assessed the evidence of record and substantial evidence supports the ALJ's finding (DN 17, pp. 6).

2. Discussion

    a. *Step Two Challenge*

At the second step in the sequential evaluation process a claimant must demonstrate she suffers from a "severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement . . ." 20 C.F.R. § 416.920(a)(4)(ii); SSR 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam). To satisfy the "severe" requirement the claimant must demonstrate the impairment or combination of impairments "significantly limit" his or her physical or mental ability to do "basic work activities." 20 C.F.R. § 416.922(a). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.922(b). To satisfy the "medically determinable" requirement the claimant must present objective medical evidence (i.e., signs, symptoms, and

laboratory findings) that demonstrates the existence of a physical or mental impairment. 20 C.F.R. § 416.921; SSR 16-3p, 2017 WL 5180304, at *11. To satisfy the "duration" requirement the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909.

The determination whether a mental condition "significantly limits" a claimant's ability to do one or more basic work activities is based upon the degree of functional limitation in four broad functional areas that are known as the "paragraph B" criteria. 20 C.F.R. § 416.920a(c)(3); 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E. They are: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 416.920a(c)(3). The four areas of mental functioning are evaluated on the following five-point rating scale: "None, mild, moderate, marked, and extreme." 20 C.F.R. § 416.920a(c)(4). If the four areas of mental functioning are rated as "none" or "mild," the Administrative Law Judge will generally conclude that the claimant's impairment is not "severe," unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § 416.920a(d)(1).

Despite the diagnosis of unspecified schizophrenia spectrum and other psychotic disorder, provisional, (herein "schizophrenia") from an "acceptable medical source," the ALJ did not acknowledge the existence of this condition and failed to make findings concerning whether it satisfied the "medically determinable," "severe," and "duration" requirements at step two (Tr. 730-34, 767-76, 921-24, 931-33, 397-402). 20 C.F.R. § 416.902(a)(7). Under Maziarz v. Sec'y of Health & Hum. Servs., 837 F.2d 240, 244 (6th Cir. 1987), when, at step two of the sequential evaluation process, an administrative law judge does not find a certain impairment to be "severe" but finds the claimant has other "severe" impairments, generally it is not reversible error if the

administrative law judge considers limitations imposed by the severe and non-severe impairments in the remaining steps of the disability analysis.

Here, though the ALJ never mentions Plaintiff's schizophrenia, substantial evidence still supports the ALJ's RFC finding because he adequately considered the limitations imposed by this condition and the "severe" impairments in the remaining steps of the disability analysis.  First, the ALJ references Plaintiff's auditory hallucinations throughout his step four findings, seen with "[t]he claimant reported hearing the voices of family members that had passed on and feeling their presence (Exhibit C7F)," "reporting having a lot of anxiety and hearing things (Exhibit C8F).  The claimant reported that she could not make out the words the voices were say[ing] and they were not commanding her to harm herself or others (Exhibit C8F)," "she did report some improved with auditory hallucinations (Exhibit C13F)," (Tr. 23-24).  Under 12.03, schizophrenia spectrum and other psychotic disorders "are characterized by delusions, hallucinations, disorganized speech, or grossly disorganized or catatonic behavior, causing a clinically significant decline in functioning."  By referencing the auditory hallucinations, the ALJ demonstrates that he considered this symptom imposed by the Plaintiff's schizophrenia when crafting the RFC limitations.

Second, the ALJ properly considered the degree to which Plaintiff's schizophrenic auditory hallucinations imposed limitations on her mental RFC.  Though the ALJ did not find this condition limited Plaintiff's ability to concentrate for a specific percent of each hour in an eight-hour workday, the mental RFC does address a limitation on her ability to concentrate by restricting Plaintiff to "simple, routine tasks" (Tr. 20).  In reaching this conclusion, the ALJ acknowledged the medical evidence which showed "[w]ith regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation.  The Claimant reported that she enjoys reading in December 2019 (Exhibit C7F).  Her attention and concentration were adequate in April and May

8

of 2020 (Exhibit C14F)" and further in the decision "[a]lthough she testified to issues with concentration, it appears normal in treating notes (Exhibits C7F and C14F)" (Tr. 19, 25). Additionally, a review of the record shows that Plaintiff's concentration was found to be normal or adequate, and non-cited medical records also denote Plaintiff's concentration as adequate (Tr. 918, 930, 956, 983, 995, 1001, 1027). Thus, substantial evidence supports the above-mentioned limitation in the ALJ's mental RFC finding. Gayheart v. Comm'r, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). Lastly, Plaintiff argues that the ALJ did not find "major depressive disorder, severe with psychosis" to be a severe impairment (DN 14, pp. 2). However, the ALJ did find the Plaintiff had a mood disorder as a severe impairment and discussed Plaintiff's depression at the remaining steps of the disability analysis, and, therefore, the ALJ's finding does not constitute as reversible error (Tr. 18, 21, 23-24).

    b. *Remaining Challenges to the RFC*

The RFC determination is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946(c). The Administrative Law Judge makes this finding based on a consideration of medical source statements, prior administrative medical findings, and all other evidence in the case record. 20 C.F.R. §§ 416.929, 416.945(a)(3), 416.946(c). Thus, in making the RFC determination the Administrative Law Judge must necessarily evaluate the persuasiveness of the medical source statements and prior administrative medical findings in the record as well as assess the claimant's subjective allegations.

> i. Physical Limitations

Plaintiff argues that the RFC limitations do not properly account for her lower extremity and neuropathy and feet condition's impact on her ability to stand and walk (DN 14, pp. 3). Plaintiff asserts that the ALJ failed to report the findings of a lower extremity neurological test or "other medical examination findings related to alleged symptoms including antalgic gait" and doing so violates 20 C.F.R. § 416.929 and SSR 16-3p (Id. at 5). In response, Defendant counters substantial evidence supports the RFC finding as the ALJ noted the medical records revealed improvement with her treatment, examination findings and treatment notes that found Plaintiff had a normal with an occasional or no limp and steady balance and coordination and a full range of motion (DN 17, pp. 7). Additionally, Defendant states that the ALJ reviewed the prior administrative medical findings of the State agency medical consultants and Plaintiff's reported activities (Id. at 7-8).

The undersigned finds that substantial evidence supports the ALJ's RFC finding and comports with 20 C.F.R. § 416.929—concerning the assessment of symptoms including pain—as the ALJ considered the evidence of record regarding both Plaintiff's physical and mental impairments. Regarding Plaintiff's physical impairments, the ALJ sets forth the following analysis.

> In terms of the claimant's neuropathy, issues with her Achilles tendon and plantar fasciitis, the undersigned has limited the claimant to light work activity, with limited standing and walking to four hours, limited postural activities including climbing and limited pushing and pulling with the bilateral lower extremities. The undersigned has also limited the claimant exposure to work hazards, temperature extremes, humidity and irritants. The claimant sought treatment for numbness and tingling in her hands and feet that was causing significant pain in December of 2019 (Exhibit C6F). She reported that she had recently been started on Gabapentin for the neuropathy but she had not noticed any improvement in her symptoms (Exhibit C6F). Her physician decided at this time to prescribe Cymbalta and see if there was improvement (Exhibit C6F). The claimant's joints appeared symmetric with full range of motion upon exam (Exhibit C6F). In terms of her feet, she reported

that her symptoms were worse with her first steps when walking (Exhibit C6F). She exhibited no limp and her balance and coordination were steady (Exhibit C6F). At this time, in addition to neuropathy, she received a diagnosis of Achilles tendinosis of the bilateral heels as well as plantar fasciitis of the bilateral feet following imaging (Exhibit C6F). The claimant received physical therapy in December as well (Exhibit C6F).

In January of 2020, the claimant reported burning pain in both feet (Exhibit C6F). She did not exhibit a limp in her gait and her balance and coordination were steady (Exhibit C6F). Her assessment indicated neuropathy of the bilateral feet as well as mildly improved achilles tendinosis of the bilateral heels (Exhibit C6F). The claimant's Neurontin was increased and her physician recommended that she continues with physical therapy and indicated that they would write her a prescription for a cane (Exhibit C6F). She received physical therapy that month (Exhibit C6F). Physical therapy noted she had made progress towards all her goals, with her range of motion greatly improved as well as strength in her right lower extremity (Exhibit C6F). The claimant reported in February of 2020 that she had been discharged from therapy and she was using a quad cane with no real change (Exhibit C11F). She exhibited a mild limp at this time but she was steady with her quad cane (Exhibit C11F). The claimant was advised to continue with her medications and use the cane as needed (Exhibit C11F). Physical therapy notes indicated minimal progress due to neuropathy in her feet and she was discharged (Exhibit C11F).

In July of 2020, the claimant reported bilateral feet numbness tingling with worsening symptoms (Exhibit C11F). She was taking Gabapentin three times a day (Exhibit C11F). The physician noted probably neuropathy of the bilateral lower extremities and recommended a bilateral lower extremity EMG/NCV (Exhibit C11F). The claimant reported worsening neuropathic pain and chronic musculoskeletal pain in September of 2020 (Exhibit C10F). She also reported gardening and doing yard work until she had pain in therapy notes that month (Exhibit C13F). She had another follow-up regarding her neuropathy in February of 2021, where she reported that Gabapentin helps with her numbness and tingling (Exhibit C12F). Her gait was normal and treating notes indicated that she was able to toe, heel and tandem walk without difficulty (Exhibit C12F). She was instructed to continue with the Gabapentin (Exhibit C12F). The medication continued to help with her numbness and tingling in May of 2021, though she indicated difficulty sleeping at that time (Exhibit C14F). Her gait was normal and she was able to toe, heel and tandem walk without difficulty as well as power testing demonstrated five out of five proximal and distal upper and lower extremities (Exhibit C14F). Despite the claimant's testimony that her Gabapentin provided little relief, it appears in recent treating notes that she indicated otherwise (Exhibits C12F and C14F). Recent treating notes, as well as past treating notes, have mentioned a normal gait, outside from an occasional limp noted on at least one occasion and the prescription of a cane, which is not mentioned in more recent notes when describing her gait (Exhibits C6F, C11F, C12F and C14F). Her treatment appears fairly conservative

> and her physical exams fairly normal. The undersigned does not find support for additional limitations outside of those assigned.
>
> In a somewhat related impairment, the claimant also suffers from carpal tunnel syndrome. The claimant had reported numbness and tingling in her hands in December of 2019, with carpal tunnel syndrome indicated (Exhibit C6F). Her physician recommended that she use wrist splints for almost the entire day for two weeks, then use them at night (Exhibit C6F). She had positive Tinel and Phalen signs bilaterally in the upper extremities (Exhibit C6F). The claimant received follow-up treatment in August of 2020 for right hand pain, numbness and tingling (Exhibit C9F). She exhibited a positive carpal tunnel compression test and positive Phalen sign (Exhibit C9F). EMG/NCV testing of the bilateral upper extremities showed polyneuropathy and mild carpal tunnel syndrome (Exhibit C9F). The claimant was symptomatic in her right wrist, but she did not want to proceed with any surgical option and her physician wrote her a prescription for another brace (Exhibit C9F). The undersigned has accounted for this impairment by limiting the claimant to light work activity, limiting her engagement in postural activities and limiting her handling of objects. The undersigned does not find additional limitations warranted, as the claimant's treating regarding her upper extremities has been limited and she opted out of surgery for her carpal tunnel syndrome (Exhibits C6F and C9F). The undersigned has also taken into account the claimant's obesity when limiting her to a restricted range of light work activity with limited exposure to irritants (Exhibits C6F, C9F, C10F, C11F, C12F, C14F and C15F). The undersigned does not find support in the record for additional restrictions related to this impairment.

(Tr. 22-23). The above excerpt demonstrates that the ALJ adequately considered the medical source statements, prior administrative medical findings, and the Plaintiff's subjective allegations. Following 20 C.F.R. § 416.929(c)(3)'s factors, the ALJ properly evaluated Plaintiff's symptoms regarding her physical pain. This is seen with her discussion of Plaintiff's medication efficacy, her progress with physical therapy, in addition with physician notes and diagnosis that the ALJ cites throughout the quoted material, and her gardening and yard work activities (Id.). Further, the ALJ adequately discussed the EMG finding of neuropathy as the ALJ cites the findings in his decision, while also demonstrating the substantial evidence of the medical record supports his finding regarding Plaintiff's physical limitations.

> ii. Mental Health Limitations

Plaintiff next argues the ALJ did not properly evaluate the impact of Plaintiff's mental impairments when constructing the RFC. Plaintiff claims the ALJ did not review Plaintiff's PTSD symptoms, discuss schizophrenia symptoms and relied on conclusory statements. Defendant argues that substantial evidence does support the ALJ's RFC limitation as he properly considered the medical record, which included periods of improvement and a stable condition (DN 17, pp. 9-10).

The ALJ constructed Plaintiff's mental impairment with the following analysis:

> In terms of the claimant's mental impairments, the undersigned has limited the claimant to simple, routine tasks, limited the claimant's social interaction and limited the claimant to work with infrequent changes that are gradually introduced. Treating notes from December of 2019 referenced a generalized anxiety disorder and a mild episode of recurrent major depressive disorder (Exhibit C6F). The claimant was prescribed Cymbalta in part for her neuropathy but also to see if it helped with her mental impairments (Exhibit C6F). The claimant received mental health counseling that month (Exhibit C7F). She reported having depression symptoms throughout her life, with periods of improvement (Exhibit C7F). At the time of her visit, she was experiencing thoughts of self harm and her husband was checking on her daily to make sure she was not taking any more of her medication than she should (Exhibit C7F). The claimant reported hearing the voices of family members that had passed on and feeling their presence (Exhibit C7F).
>
> In January of 2020, she had a follow-up visit, where she indicated that she was not on her past psychotropic medications at that time, as her primary care physician did not want to prescribe them (Exhibit C7F). The claimant missed some therapy sessions in February, March, May and did attend a telehealth therapy session via telephone in April of 2020, reporting doing about the same (Exhibit C8F). She indicated that her mood had been okay but she was having a lot of anxiety related to the pandemic and she continued to have issues sleeping despite taking medication for sleep (Exhibit C8F). She was started on new medication (Exhibit C8F). The claimant also reported that month that two of her grandchildren were staying with her and this was a good distraction (Exhibit C8F). At the end of the month, she experienced some family deaths and she was staying in her room a lot (Exhibit C8F). The grandchildren were going to stay with another person (Exhibit C8F). She also attended a session by telephone in late May of 2020, reporting having a lot of anxiety and hearing things (Exhibit C8F). The claimant reported that she could not make out the words the voices were say and they were not commanding her to harm herself or others (Exhibit C8F). She stated that she

continued to have thoughts off and on about self harm (Exhibit C8F). Additional medications were added for her depression and anxiety (Exhibit C8F).

She reported, in mid-May of 2020, that her mood had been up and down (Exhibit C8F). She heard mumbles and whispers that come and go (Exhibit C8F). Post-traumatic stress disorder was discussed in relation to the loss of her daughter 28 years prior (Exhibit C8F). Later in the month, she struggled with thoughts of not wanting to be alive (Exhibit C8F). In mid-June of 2020, she was still struggling with depression, but she enjoyed her birthday party (Exhibit C8F). At a session later that month, she was experiencing less morbid thoughts and she had enjoyed some time with her family (Exhibit C8F). In July of 2020, a close relative passed away and two other family members had an altercation, which caused the claimant to have thoughts of using a knife to harm them, but her husband took her home and she felt better (Exhibit C13F). She reported having these type thoughts during the high stress situations (Exhibit C13F). Her therapist related it to her PTSD (Exhibit C13F). That month she continued to struggle with depression and anxiety, but she reported falling asleep a little easier (Exhibit C13F). Her husband was going to purchase some flowers for her to plant to give her something to do (Exhibit C13F). She was considered stable overall and with slight improvement since her last session (Exhibit C13F).

In August of 2020, the claimant had some regression with her depression connected to the anniversary of her mother's passing (Exhibit C13F). Her mood varied later in the month, though she did report some improved with auditory hallucinations (Exhibit C13F). The claimant made some progress in September of 2020, as she worked in the yard and enjoyed it (Exhibit C13F). However, she continued to struggle with pushing through with her depression and doing things that were healthy for her (Exhibit C13F). Towards the end of the month, she had a good week and she started cleaning up and cooking breakfast (Exhibit C13F). In mid-October of 2020, she had an escalation of symptoms related to two recent losses (Exhibit C13F). The claimant struggled due to physical pain in November of 2020 (Exhibit C13F). She was fairly stable with some improvement at a later session that month (Exhibit C13F). In February of 2021, she was keeping two grandchildren for two weeks because her daughter was sick and though she still struggled, she sounded better than she had in a long time according to her therapist (Exhibit C13F). She struggled again in March of 2021 due to the loss of another family member (Exhibit C13F). The undersigned does not find additional limitations warranted. The record does indicate that the claimant's mental health has varied, but most regressions in her status appear related to life stressors such as loss of a family member and the pandemic (Exhibits C6F, C7F, C8F and C13F). Additionally, the treating notes do mention periods of improvement and there is no evidence of the claimant requiring inpatient mental health treatment (Exhibits C6F, C7F, C8F and C13F). The claimant has reported engaging in household chores and yardwork at times, though this is limited by her physical impairments (Exhibit C7F, C8F and C13F). Her memory has appeared normal overall (Exhibits C8F and C14F). She has expressed issues dealing with the public, but she has also reported

> traveling and enjoying her family's company (Exhibits C7F, C8F and C13F). Although she testified to issues with concentration, it appears normal in treating notes (Exhibits C7F and C14F).

(Tr. 23-25). The ALJ satisfied the requirements of 20 C.F.R. § 416.929, 20 C.F.R. § 416.920a, and SSR 16-3p. The above quoted language shows the ALJ considered Plaintiff's mental health treatment notes and symptoms she experienced. Further, the ALJ discussed the medication Plaintiff was prescribed, Plaintiff's self-reported moods, her auditory hallucinations, how Plaintiff's "mental health has varied," and her daily activities (Tr. 23-24). Though the ALJ does not give an in-depth analysis of Plaintiff's PTSD, substantial evidence supports the ALJ's RFC limitation because it is clear the ALJ considered Plaintiff's PTSD when creating limitations in her RFC as the ALJ referenced her condition in the decision and cited to the relevant treatment notes. Gayheart v. Comm'r, 710 F.3d 365, 374 (6th Cir. 2013). Because the ALJ followed the appropriate regulations and considered the evidence of record, substantial evidence supports the RFC finding.

## Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004) (quoting Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003)). Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law. (Id.). After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law. Therefore, Plaintiff is not entitled to relief regarding her challenge.

## **ORDER**

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

January 30, 2023

*H. Brent Brennenstuhl*
**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies to: Counsel of Record

16